# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ERIC HERRION**,

    *Plaintiff,*

  v.

**CHILDREN'S HOSPITAL NATIONAL MEDICAL CENTER**, *et al.*,

    *Defendants.*

Civil Action No. 10-00254 (CKK)

## MEMORANDUM OPINION
(May 24, 2011)

Plaintiff Eric Herrion ("Herrion") commenced this action against Children's National Medical Center ("Children's National"), sued here under the name Children's Hospital National Medical Center, and three security officers in its employ — Emerson Anderson, Jason Green, and Calvin White (the "Security Officers"; together with Children's National, "Defendants") — alleging that he was attacked, beaten, and restrained by the Security Officers while visiting his sister at Children's National in September 2007.  In his [6] Amended Complaint, Herrion asserts two claims against the Security Officers — each of whom has been commissioned as a special police officer by the Mayor of the District of Columbia[1] — under Section 1 of the Ku Klux Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983 ("Section 1983"), as well as a common law claim for malicious prosecution against both Children's National and the Security Officers.

---

[1]  In the District of Columbia, special police officers "are commissioned for the special purpose of protecting property on the premises of the employer."  *Limpuangthip v. United States*, 932 A.2d 1137, 1142 (D.C. 2007) (internal quotation marks omitted).  The employer must apply for the commission, and "[o]nce a special police officer ceases to work for his or her employer, that [special police officer] loses the appointment."  *Moorehead v. District of Columbia*, 747 A.2d 138, 144 (D.C. 2000).

Presently before the Court is Defendants' [7] Motion for Summary Judgment. Invoking the doctrine of *res judicata*, Defendants argue that Herrion is precluded from seeking any relief in this action in light of a prior action he brought against Children's National in the Superior Court for the District of Columbia. The Court agrees. Therefore, upon a searching review of the parties' submissions, the relevant authorities, and the record as a whole, the Court shall grant Defendants' motion and dismiss this action in its entirety.

## I. PRELIMINARY MATTERS

Preliminarily, the Court pauses to make two overarching observations about the nature of Defendants' motion and Herrion's opposition to that motion.

First, although styled in the alternative as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants' motion turns upon consideration of materials that are outside the scope of the pleadings. Indeed, in the course of briefing the motion, both parties effectively treat the motion as one for summary judgment. For his part, Herrion does not suggest either that he has been deprived "a reasonable opportunity to present all the material that is pertinent to the motion," Fed. R. Civ. P. 12(d), or that he "cannot present facts essential to justify [his] opposition," Fed. R. Civ. P. 56(d). Therefore, the Court shall treat the motion solely as one for summary judgment.

Second, the United States District Court for the District of Columbia has supplemented Rule 56 of the Federal Rules of Civil Procedure with Local Civil Rule 7(h)(1), which requires that each party submitting a motion for summary judgment attach a statement of material facts for which that party contends there is no genuine dispute. The party opposing the motion must, in turn, submit a responsive statement enumerating all material facts which the party contends are

genuinely disputed.  *See* LCvR 7(h)(1).  Both the moving party's initial statement and the opposing party's responsive statement must be based on "references to the parts of the record relied on to support the statement."  *Id.*  This well-reasoned rule "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record."  *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996).  In this case, while Herrion has filed a responsive statement, his chosen approach falls short of what is required in two material respects.  First, Herrion occasionally responds to factual matters identified by Defendants simply by characterizing them as "irrelevant and immaterial."  *See* Pl.'s Response to Defs.' Alleged Stmt. of Undisputed Material Facts, ECF No. [8], ¶¶ 8, 16, 21-26, 28.  Such a response is patently insufficient to controvert the truth of the matters identified.  To the extent these matters turn out to be material to the resolution of this motion, Herrion has failed to supply a basis for treating them as controverted.  Second, while Herrion suggests that he disputes certain factual matters identified by Defendants, he repeatedly does so without citing to any competent evidence in the record.  *See id.* ¶¶ 10-11, 14, 16.  However, a responsive statement must include specific "references to the parts of the record relied on to support the statement."[2]  LCvR 7(h)(1).  In each of these respects, Herrion has failed to discharge his burden under the Local Rules of this Court.  Therefore, in an exercise of its discretion, the Court shall assume that the uncontroverted facts identified by Defendants in their statement are admitted for purposes of resolving the

---

[2]  In this way, Local Civil Rule 7(h)(1) aligns with the relatively recent amendments to Rule 56 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(c)(1) & (3) (requiring parties to "cit[e] to particular parts of materials in the record," and providing that "[t]he court need consider only the cited materials.").

pending motion.

## II. BACKGROUND

This action turns on events that are alleged to have transpired on September 17, 2007. *See* Am. Compl., Docket No. [6], ¶ 8. Briefly stated, Herrion alleges that, while he was visiting his sister at Children's National on that date, he was attacked, beaten, and restrained by the Security Officers, who subsequently fabricated a charge of assault against him in order to "cover up" their alleged wrongful conduct. *See id.* ¶¶ 9-10, 22.

### A. *Herrion Brings Suit in the Superior Court for the District of Columbia*

Significantly, this is not the first time that Herrion has brought suit in connection with these alleged events. On September 17, 2008, Herrion commenced an action against Children's National in the Superior Court for the District of Columbia (the "Superior Court action"). Defs.' Stmt. of Undisputed Material Facts ("Defs.' Stmt."), ECF No. [7], ¶ 1. In that action, Herrion asserted claims against Children's National for assault and battery and false arrest.[3] *Id.* ¶ 3. Both claims were predicated upon the same sequence of events that allegedly occurred when Herrion went to Children's National to visit his sister on September 17, 2007.

Like here, the operative allegations in the Superior Court action were as follows:

• Herrion was asked to leave the room where his sister was receiving treatment;

• Despite complying with the request, he was followed and harassed as he was leaving the building;

• Once outside, the Security Officers attacked and restrained him;

• Herrion was taken inside the building by the Security Officers and held in a room;

• Herrion was harassed while the police were called to the scene; and

---

[3] A third claim, immaterial to the resolution of this motion, was resolved prior to trial.

- The Security Officers provided the police with manufactured evidence concerning the events that transpired.

Defs.' Stmt. ¶ 5 & Ex. 1 ¶¶ 5-7.  In the Superior Court action, Herrion brought suit against Children's National — the only named defendant in that action — on the theory that Children's National was vicariously liable for the acts of the Security Officers in its employ.  *Id.* ¶¶ 5-6 & Ex. 1 ¶¶ 8-9.

Children's National answered the complaint and the parties proceeded to conduct discovery.  Defs.' Stmt. ¶¶ 7-8.  Eleven months before the trial began, Children's National identified the three Security Officers involved in the altercation by name and produced a copy of the security camera footage recording the events that served as the basis for the action.  *Id.* ¶¶ 8-9 & Ex. 4 at 4, 6-8.

A five-day jury trial began on January 25, 2010.  Defs.' Stmt. ¶ 15.  The two claims at issue at trial were Herrion's claims for assault and battery and false arrest.  *Id.*  Herrion introduced the security camera footage into evidence.  *Id.* ¶ 16.  On February 2, 2010, the jury returned a split verdict, finding in favor of Children's National on Herrion's claim for false arrest and in Herrion's favor on his claim for assault and battery.  *Id.* ¶ 17 & Ex. 10 at 1.  Herrion was awarded $30,000 in compensatory damages.  *Id.* ¶ 17 & Ex. 10 at 2.  The Superior Court entered a final judgment that same day.  *Id.* ¶ 18 & Ex. 11.  Children's National's subsequent motions seeking relief from the final judgment have all been denied.  *Id.* ¶¶ 19-20.

### B.  *Herrion Brings Suit in This Court*

On February 18, 2010, less than two weeks after the jury rendered its verdict in the Superior Court action, Herrion commenced this action, naming both Children's National and the Security Officers as defendants.  *See* Compl., Docket No. [1].  On March 30, 2010, Defendants

moved for summary judgment on the ground that the doctrine of *res judicata* precludes Herrion from securing relief in this action. *See* Defs.' Mot. for Summ. J., Docket No. [3].

On April 19, 2010, Herrion responded by amending his Complaint. *See* Am. Compl., Docket No. [6]. Like the previous iteration, Herrion's Amended Complaint rests on the same factual underpinning as the Superior Court action — that is, the events that allegedly transpired on September 17, 2007. *See id.* ¶¶ 8-10, 14. In connection with those alleged events, Herrion asserts three claims in his Amended Complaint: two claims against the Security Officers arising under Section 1983, the first predicated on allegations of excessive force (Count I) and the second predicated on allegations that the Security Officers deliberately made false representations to the Metropolitan Police Department (Count II); and a third claim against both Children's National and the Security Officers for malicious prosecution (Count III). *See id.* ¶¶ 15-24. In the Amended Complaint, Herrion purports to be suing the Security Officers in both their "official" and "individual" capacities. *See id.* ¶¶ 5-7.

So far as factual allegations go, the only truly material change in Herrion's Amended Complaint has nothing to do with the underlying conduct at issue. Rather, Herrion sets forth a handful of allegations concerning the Superior Court action itself. He expressly acknowledges that he filed a suit in the Superior Court "[a]s a result of" the events of September 17, 2007, that the action "went to trial," and that a "jury returned a verdict of $30,000 on [his] claim for assault and battery and in favor of [Children's National] on the claim for false arrest." Am. Compl. ¶ 11. Apparently by way of explanation for this action, Herrion proceeds to allege that the "violations of the [his] rights could not be supported with objective evidence nor meet the minimum standard for advancing claims associated with what happened in the security office until two days

before the Superior Court trial was scheduled to begin when the puzzle . . . was finally solved and its secrets were revealed." *Id.* ¶ 13.

On April 27, 2010, the Court denied Defendants' first motion for summary judgment without prejudice to re-file after tailoring it to speak to the Amended Complaint. *See* Min. Order (Apr. 27, 2010). On May 11, 2010, Defendants filed this motion. *See* Defs.' Mem. of P. & A. in Supp. of its [sic] Mot. to Dismiss and/or Mot. for Summ. J., ECF No. [7]. On May 25, 2010, Herrion filed an opposition. *See* Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. [8]. On June 1, 2010, Defendants filed a reply. *See* Defs.' Reply to Pl.'s Opp'n to Def.'s [sic] Mot. for Summ. J., ECF No. [9].

On April 7, 2011, after reviewing the parties' initial briefing, the Court issued a minute order requesting further clarification as to the nature of Herrion's claims in this action. *See* Min. Order (Apr. 7, 2011). The Court set forth its understanding that Herrion's two claims against the Security Officers were based on the contention that the Security Officers are liable under Section 1983 for willfully and maliciously beating Herrion and deliberately making false representations to the Metropolitan Police Department in their capacity as security guards in Children's National's employ. *See id.* The Court directed Herrion to file a notice indicating whether the Court's understanding of his claims was correct and, if appropriate, identifying whether he intended to sue the Security Officers in a different capacity or for additional conduct. *See id.*

Purporting to respond to the Court's directive, Herrion filed a "notice of claims" on April 14, 2011. *See* Notice of Pl.'s Claim in Resp. to the Court's Order of April 7, 2011 ("Pl.'s Notice of Claims"), ECF No. [10]. Therein, Herrion represented, without further elaboration, that his two claims against the Security Officers rest on the contention that the Security Officers are

"liable in their **individual capacities** acting under color of law." *Id.* at 1 (emphasis in original). As the Court observed in a further minute order, Herrion's representation made it clear that he has not brought suit against the Security Officers in their "official" capacities, despite the use of such language in the Amended Complaint. *See* Min. Order (Apr. 15, 2011).

Unfortunately, Herrion's terse "notice of claims" was otherwise unhelpful in clarifying the precise contours of his claims against the Security Officers, and the Court therefore directed the parties to engage in a further round of briefing focusing on the question of the capacity in which the Security Officers have been sued in this action and the implications for Defendants' *res judicata* argument. *See* Min. Order (Apr. 15, 2011). On April 25, 2011, Defendants filed their supplemental memorandum. *See* Defs.' Suppl. Mem. of P. & A. in Supp. of Their Mot. to Dismiss and/or Mot. for Summ. J., ECF No. [12]. On May 9, 2011, Herrion filed his supplemental opposition. *See* Pl.'s Suppl. Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss and/or for Summ. J. ("Pl.'s Suppl. Opp'n"), ECF No. [13]. On May 16, 2011, Defendants filed their supplemental reply. *See* Defs.' Reply to Pl.'s Opp'n to Suppl. Mem. of P. & A. in Supp. of Their Mot. to Dismiss and/or for Summ. J., ECF No. [14]. The motion is now fully briefed and ripe for a decision.

### III. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record — including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence — in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477

U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## IV.  DISCUSSION

Herrion's pleadings are hardly the model of artful drafting. In the short time that this action has been pending, Herrion has abandoned some claims and asserted new ones in their place. As a result, the Court shall begin its discussion by delineating the contours of this action. Thereafter, the Court shall turn to the heart of the parties' dispute — namely, whether Herrion's claims against the Security Officers are barred under the doctrine of *res judicata* in light of the prior action in the Superior Court for the District of Columbia.

### A.     The Scope of This Action Is Confined to Herrion's Section 1983 Claims Against the Security Officers in Their Individual Capacities

Herrion asserts three claims in his Amended Complaint: two claims against the Security Officers arising under Section 1983, the first predicated on allegations of excessive force (Count I) and the second predicated on allegations that the Security Officers deliberately made false representations to the Metropolitan Police Department (Count II); and a third claim against both Children's National and the Security Officers for malicious prosecution (Count III). *See* Am. Compl. ¶¶ 15-24. In the Amended Complaint, Herrion purports to be suing the Security Officers in both their "official" and "individual" capacities. *See id.* ¶¶ 5-7.

**1.    Herrion Has Abandoned His Malicious Prosecution Claim Against Children's National and the Security Officers**

Herrion's Amended Complaint includes a claim for malicious prosecution against both Children's National and the Security Officers (Count III).  *See* Am. Compl. ¶¶ 21-24.  However, in opposition to this motion, Herrion states that he "does not intend to pursue the claim for malicious prosecution and therefore concedes that this count of his amended complaint should be dismissed."  Pl.'s Opp'n at 1 n.1.  Based on this explicit concession, the Court shall grant Defendants' motion as conceded insofar as it seeks dismissal of Herrion's claim for malicious prosecution against Children's National and the Security Officers.

Significantly, Herrion's malicious prosecution claim is the only claim that has been asserted against Children's National in this action; both of Herrion's Section 1983 claims are directed exclusively towards the Security Officers.[4]  *See* Am. Compl. ¶¶ 15-24.  Given that Herrion has conceded that his malicious prosecution claim must be dismissed, it follows that Children's National must be dismissed as a defendant.

---

[4]  Lest there be any confusion, the Court pauses to observe that Herrion could not have asserted a viable Section 1983 claim against Children's National in this action.  To the extent Herrion would seek to hold Children's National liable for the acts allegedly committed by the Security Officers in the scope of their employment, a private employer cannot be held liable under Section 1983 under a theory of *respondeat superior* for the constitutional torts committed by its employees.  *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990), *cert. denied*, 502 U.S. 809 (1991).  To the extent Herrion would seek to hold Children's National liable for the acts allegedly committed by the Security Officers in their "official" capacities as special police officers commissioned by the Mayor of the District of Columbia, official-capacity suits are treated as suits against the government itself, *Hafer v. Melo*, 502 U.S. 21, 25 (1991), meaning that the District of Columbia — and not Children's National — would be the true defendant for any such claim.  Finally, to the extent Herrion would seek to hold Children's National liable under Section 1983 for its own acts, *see Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 61-62 (D.D.C. 2007), such a claim could have, and should have, been raised in the Superior Court action — in which Children's National was a named party — and would therefore be barred by the doctrine of *res judicata*.

### 2. Herrion Has Abandoned Any Claims Against the Security Officers in Their "Official" Capacities

In his Amended Complaint, Herrion purports to bring suit against the Security Officers in both their "official" and "individual" capacities. *See* Am. Compl. ¶¶ 5-7. Because the Amended Complaint does not specify what is meant by this somewhat cryptic statement,[5] the Court issued a minute order requesting further clarification as to the nature of Herrion's claims against the Security Officers. *See* Min. Order (Apr. 7, 2011). Purporting to respond to the Court's minute order, Herrion filed a "notice of claims," in which he represented that his two claims against the Security Officers rest on the contention that the Security Officers are "liable in their **individual capacities** acting under color of law." Pl.'s Notice of Claims at 1 (emphasis in original). As the Court observed in a further minute order, Herrion's representation made it clear that he is not pursuing any claims against the Security Officers in their "official" capacities, despite the use of such language in the Amended Complaint. *See* Min. Order (Apr. 15, 2011). Based on this explicit concession, the Court shall grant Defendants' motion as conceded insofar as it seeks dismissal of Herrion's Section 1983 claims against the Security Officers in their "official" capacities (Counts I and II).

_____

[5] The only conceivable "official" capacity in which the Security Officers could be sued under Section 1983 is their capacity as special police officers commissioned by the Mayor of the District of Columbia. *See* D.C. Code § 5-129.02(a). However, as previously observed, suits against government officials in their "official" capacities are treated as suits against the government itself, and Herrion has never attempted to bring the District of Columbia into this action nor alleged a factual basis for suggesting that the conduct at issue could be attributed to a municipal policy or custom. *See Waker v. Brown*, 754 F. Supp. 2d 62, 64-65 (D.D.C. 2010) (concluding that the plaintiff in an official-capacity suit failed to effect proper service upon the District of Columbia); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996) (providing that a complaint must "include some factual basis for the allegation of a municipal policy or custom").

As a result of Herrion's explicit concessions, the only claims that remain at issue in this action are Herrion's two Section 1983 claims against the Security Officers in their "individual" capacities, the first predicated on allegations of excessive force (Count I) and the second predicated on allegations that the Security Officers deliberately made false representations to the Metropolitan Police Department (Count II). The Court shall now turn to the task of explaining why Herrion is precluded from securing relief as to these claims.

## B. Herrion's Section 1983 Claims Against the Security Officers in their Individual Capacities Are Barred by the Doctrine of Res Judicata

Federal courts must accord "full faith and credit" to the judgments of state courts, 28 U.S.C. § 1738, a command that extends with no less force to the judgments rendered by the courts of the District of Columbia, *Youngin's Auto Body v. District of Columbia*, __ F. Supp. 2d __, 2011 WL 996662, at *3 (D.D.C. Mar. 17, 2011). To provide the requisite "full faith and credit," federal courts must give the judgments of other courts of competent jurisdiction "the same preclusive effect as would the issuing court," *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997) — in this case, the Superior Court of the District of Columbia. The question of whether the Superior Court would afford the judgment at issue in this case preclusive effect turns on the reach of the doctrine of *res judicata*, or claim preclusion.

Under District of Columbia law,[6] the doctrine of *res judicata* provides that "a valid final

---

[6] Because federal courts are required to provide state court judgments "the same full faith and credit . . . as they have by law or usage in the course of such State, Territory or Possession," 28 U.S.C. § 1738, they apply state *res judicata* principles, *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 n.3 (7th Cir. 2011). Nonetheless, as it has repeatedly been observed that there is no material difference between the law of the District of Columbia and the federal common law on this subject, *see, e.g.*, *Stanton*, 127 F.3d at 78 n.4, authorities interpreting the doctrine in either context are persuasive.

judgment on the merits absolutely bars the same parties from relitigating the same claim in a subsequent proceeding." *Mamo v. District of Columbia*, 934 A.2d 376, 387 (D.C. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1259 (2008). Specifically, a subsequent lawsuit will be barred if there has been prior litigation (i) involving the same claim or cause of action, (ii) between the parties or their privies and (iii) there has been a final judgment on the merits, (iv) by a court of competent jurisdiction. *Porter v. Shah*, 606 F.3d 809, 913 (D.C. Cir. 2010). Provided these four elements are met, the final judgment "embodies all of a party's rights arising out of the transaction involved, and a party will be foreclosed from later seeking relief on the basis of issues which might have been raised in the prior action." *Parker v. Martin*, 905 A.2d 756, 762 (D.C. 2006) (internal quotation marks omitted). In this case, Defendants have carried their burden of establishing that all four elements are present.[7]

As an initial matter, the final two elements — a final judgment by a court of competent jurisdiction — are not in dispute. The Superior Court entered its final judgment on February 2, 2010. Defs.' Stmt. ¶ 18 & Ex. 11. Children's National's subsequent motions for relief from that judgment have been denied, and the judgment remains final and binding on the parties. *Id.* ¶¶ 19-20. Meanwhile, Herrion affirmatively invoked the jurisdiction of the Superior Court, secured relief under that jurisdiction, and has never suggested that the court's jurisdiction was in any way defective. As a result, the question of whether the doctrine of *res judicata* applies in this case turns on whether there is sufficient identity between the claims and parties in the two actions.

---

[7] Because *res judicata* is an affirmative defense, its proponent bears the burden of establishing its application to the case at hand. *SBC Commc'ns Inc. v. Fed. Commc'ns Comm'n*, 407 F.3d 1223, 1230 (D.C. Cir. 2005).

### 1.    Identity of Claims

The District of Columbia courts have adopted the "transactional" approach to claims identity, under which a claim is broadly seen as all the rights the plaintiff may have had against the defendant "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Stanton*, 127 F.3d at 78 (internal quotation marks omitted). That is, there is sufficient identity between claims when they are based on a common nucleus of fact, regardless of the legal theories actually relied upon by the plaintiff in the prior litigation. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009). Generally speaking, the question is whether the claims in the prior action and the later action "arise from the same underlying transaction." *Smalls v. United States*, 471 F.3d 186, 193 (D.C. Cir. 2006).

In this case, there is no doubt that the Superior Court action and this action turn upon the same underlying conduct — namely, the events that allegedly transpired when Herrion visited his sister at Children's National on September 17, 2007. Indeed, the central factual allegations tendered by Herrion in the two actions are virtually identical:

| COMPLAINT IN THE SUPERIOR COURT ACTION | AMENDED COMPLAINT IN THIS ACTION |
| --- | --- |
| "On September 17, 2007, the plaintiff was visiting his minor sister at defendant's [sic] Children's Hospital on Michigan Avenue in the District of Columbia." Defs.' Ex. 1 ¶ 5. | "On September 17, 2007, the plaintiff was visiting his minor sister at defendant Children's Hospital on Michigan Avenue in the District of Columbia." Am. Compl. ¶ 8. |

| | |
|---|---|
| "While there, the plaintiff was asked to leave the room where his sister was being treated. Though in disagreement with this request, the plaintiff began to leave the hospital with his mother. As he was walking toward the exit, defendant's agents began to follow the plaintiff. As the plaintiff reached the door, defendant's agents continued to follow and harass the plaintiff." Defs.' Ex. 1 ¶ 6. | "While there, the plaintiff was asked to leave the room where his sister was being treated. Though in disagreement with this request, the plaintiff began to leave the hospital with his mother. As he was walking toward the exit, defendant's agents began to follow the plaintiff. As the plaintiff reached the door, defendant's agents continued to follow and harass the plaintiff." Am. Compl. ¶ 9. |
| "While outside of the hospital, several of the defendant's security personnel attacked the plaintiff, beat the plaintiff, restrained the plaintiff and took him back into the hospital where he was held in a room and repeatedly harassed while allegedly under arrest. Subsequently, the defendant summoned the Metropolitan Police." Defs.' Ex. 1 ¶ 7. | "While outside the hospital, the defendants allegedly arrested the plaintiff for assault on a police officer. At that point, the security officers beat and kicked the plaintiff and then took the plaintiff into the security office to await the arrival of the Metropolitan Police Department." Am. Compl. ¶ 10. |
| "At all times relevant herein Children's Hospital was responsible for the actions taken by security personnel relative to the plaintiff herein." Defs.' Ex. 1 ¶ 9. | "At all times relevant herein Children's Hospital was responsible for the actions taken by security personnel relative to the plaintiff herein." Am. Compl. ¶ 14. |

In fact, Herrion acknowledges that he brought suit in the Superior Court "[a]s a result of these actions" — *i.e.* the same conduct that he is attempting to challenge in this action. Am. Compl. ¶ 11. But even absent this explicit concession, it is beyond cavil that the Superior Court action and this action share a common nucleus of fact and arise from the same underlying transaction. Undeterred, Herrion offers two rejoinders, neither of which has any merit.

First, Herrion argues that *res judicata* should not apply in this case because he did not

actually pursue certain claims or legal theories before the Superior Court.[8]  *See* Pl.'s Opp'n at 2-3.  The argument is entirely misplaced.  It is well-established that *res judicata* applies regardless of the claims or legal theories actually relied upon in the earlier litigation.  *Nuyen v. Luna*, 884 A.2d 650, 658 (D.C. 2005) (internal quotation marks omitted).  *Res judicata* is "intended to prevent litigation of matters that *should have been* raised in an earlier suit" just as much as it is intended to prevent relitigation of matters that actually were raised.  *Natural Res. Def. Council v. Envtl. Prot. Agency*, 513 F.3d 257, 261 (D.C. Cir. 2008) (internal quotation marks omitted; emphasis in original).  Consistent with these aims, the doctrine may be invoked where, as here, the two actions share a common nucleus of fact and arise from the same underlying transaction.

Second, Herrion intimates that the legal theories that he intends to pursue in this action "could not be supported with objective evidence . . . until two days before the Superior Court action was scheduled to begin when the puzzle  . . . was finally solved and its secrets were revealed."  Am. Compl. ¶ 13.  As an initial matter, Herrion's contention that he did not have certain evidence at his disposal during the Superior Court action is not supported by the record.  The purportedly unsolved "puzzle" referenced by Herrion is the security camera footage of the

---

[8]  Herrion's argument is that *res judicata* does not apply here because he did not, as a matter of historical fact, pursue certain claims or legal theories before the Superior Court — in particular, a claim arising under Section 1983.  He does not appear to dispute that if he had pursued a Section 1983 claim, the Superior Court would have been able to exercise jurisdiction over such a claim.  In any event, it is well-established that state courts have concurrent jurisdiction over claims arising under Section 1983.  *See Woodward & Lothrop v. Hillary*, 598 A.2d 1142, 1143 (D.C. 1991) (plaintiff brought Section 1983 claims against special police officers and common law claims against their employer).  Moreover, *res judicata* "does not turn on whether the first court chosen had jurisdiction as expansive as a later one."  *Smith v. Horner*, 846 F.2d 1521, 1524 (D.C. Cir. 1988).  Rather, "[a]ll that matters is that [the] plaintiff . . . had the *opportunity* to litigate both claims in a court of competent jurisdiction . . . but instead chose to split them."  *Id.* (emphasis in original).

events transpiring on September 17, 2007, but that footage was produced to Herrion in the course of discovery in the Superior Court action and had been in his possession for nearly a year before the trial began. Defs.' Stmt. ¶¶ 8-9 & Ex. 4 at 4, 6-8. As a matter of fact, Herrion relied upon the security camera footage in support of his allegations, deposed one of the Security Officers using the footage, and introduced the footage into evidence at trial. *Id.* ¶¶ 11, 14, 16 & Exs. 6-7. The mere suggestion that Herrion may have encountered some difficulties in presenting the security camera footage as evidence at trial cannot suffice to evade the Superior Court's final judgment. But more to the point, Herrion's argument rests upon a complete misapprehension as to the governing legal standard. The only relevant question is whether Herrion was "aware of [his] claim[s] at the time of the first litigation," *Capitol Hill Group*, 569 F.3d at 491, and there is no doubt that Herrion was aware of his claims and in fact pursued them before the Superior Court.

To the extent Herrion feels that newly discovered evidence somehow renders the Superior Court's final judgment unjust, he is of course free to petition the Superior Court for relief from that judgment. The remedy is not a new action in this Court. The Court concludes that there is sufficient identity of claims to apply the doctrine of *res judicata* in this case.

### 2. Identity of Parties

The final element required to invoke *res judicata* — identity of parties — is also present. In this case, whether there is sufficient identity between the parties to the two actions turns on what significance can be drawn from a single undisputed fact — specifically, the fact that the Security Officers were not named as defendants in the Superior Court action. In this regard, left largely unacknowledged by Herrion is the established principle that the doctrine of *res judicata* precludes relitigation of claims not just between the same nominal parties, but also their privies.

*Sollars v. Cully*, 904 A.2d 373, 376 (D.C. 2006).

Broadly speaking, "[a] privy is one [who is] so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989). One particular form of privity may arise where two parties are bound by an agency relationship. Under District of Columbia law, a decision on the merits in a prior action involving the principal or the agent precludes a subsequent action against the other party to the agency relationship if the prior action concerned a matter within the scope of the agency. *Major v. Inner City Prop. Mgmt., Inc.*, 653 A.2d 379, 381 (D.C. 1995) (citing *Lober v. Moore*, 417 F.2d 714, 718 (D.C. Cir. 1969); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 637 F. Supp. 1333, 1341 (N.D. Ill. 1986)).[9] In accordance with this principle, courts have consistently held that *res judicata* applies to bar later suits against the principal or the agent where a final judgment has been rendered in a prior action involving the other party to the agency relationship and the two actions share a common nucleus of fact. *See, e.g.*, *Evans v. Chase Manhattan Mortg. Corp.*, Civil Action No. 04-2185 (RMC), 2007 WL 902306, at *6-7 (D.D.C. Mar. 23, 2007); *Advantage Health Plan, Inc. v. Knight*, 139 F. Supp. 2d 108, 111 (D.D.C. 2001); *Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. 'Rosvoorouzheinie'*, 172 F. Supp. 2d 79, 96 (D.D.C. 2001).

---

[9] The District of Columbia is hardly alone in this approach to privity between principals and their agents. *See, e.g.*, *Saudi Arabia v. Nelson*, 507 U.S. 349, 376 (1993) (Kennedy, J., concurring in part, dissenting in part); *Fiumura v. Fireman's Fund Ins. Cos.*, 746 F.2d 87, 92 (1st Cir. 1984); *Krepps v. Reiner*, 377 F. App'x 65, 68 (2d Cir. 2010); *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 n.11 (3d Cir. 2006); *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288-89 (5th Cir. 1989); *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 850 n.5 (6th Cir. 2006); *Lambert v. Conrad*, 536 F.2d 1183, 1186 (7th Cir. 1976); *Spector v. El Ranco, Inc.*, 263 F.2d 143, 145 (9th Cir. 1959); *Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir.), *cert. denied*, 502 U.S. 855 (1991).

In the Superior Court action, Herrion brought suit against Children's National on the theory that Children's National was vicariously liable for the actions allegedly taken by the Security Officers in the scope of their employment. Defs.' Stmt. ¶¶ 5-6, Ex. 1 ¶¶ 8-9, & Ex. 10. In this action, Herrion again seeks to secure relief for the actions that the Security Officers are alleged to have committed in the scope of their employment — this time, against the Security Officers themselves. The two actions share a common nucleus of fact and both turn on the same conduct allegedly taken in the scope of the Security Officers' agency relationship with Children's National. Indeed, in his Amended Complaint, Herrion characterizes the Security Officers as Children's National's agents and expressly alleges that they were acting within the scope of their employment at all times. *See* Am. Compl. ¶¶ 5-7, 9. Under these circumstances, Children's National and the Security Officers are in effect one and the same party for purposes of the two actions. As such, under the settled law of the District of Columbia, the Security Officers are entitled to invoke the doctrine of *res judicata* to preclude Herrion from securing relief in this action.[10]

Herrion tenders two arguments in opposition, neither of which suffices to salvage this action. In particular, Herrion argues most forcefully that "it has long been established that there

---

[10]   Herrion was previously warned that the Court was "inclined to rule that the Security Officers are privies to the Superior Court judgment insofar as they are being sued in this action in their capacity for actions committed within the scope of their employment and as security guards in Children's [National's] employ." Min. Order (Apr. 15, 2011). The Court nevertheless afforded Herrion a further opportunity to explain why the Court should not hold that this action is barred by *res judicata* based on that conclusion. Rather than taking the opportunity, Herrion adopted the erroneous position that "it matters not whether one is acting within or outside the scope of one's employment." Pl.'s Suppl. Opp'n at 5. In this action, Herrion has never argued that the Security Officers are being sued for anything other than conduct that they allegedly committed in the scope of their employment as security guards for Children's National. Even if he had, the Amended Complaint is devoid of allegations that would support such an argument.

is no obligation to join all tortfeasors . . . in one lawsuit." Pl.'s Opp'n at 1-2. While that may be an accurate statement of the general rule governing the joinder of joint tortfeasors in a single action, the argument is misplaced; a final judgment still binds the parties and all their privies regardless of whether they are joint tortfeasors. As a matter of fact, the primary authority relied upon by Herrion in making his argument is in complete agreement on this point, providing that the general rule governing the joinder of joint tortfeasors does not override the preclusive effect to be afforded judgments where multiple parties are in privity. *See Manicki v. Zeilmann*, 443 F.3d 922, 926 (7th Cir. 2006) (holding that a plaintiff need not name joint tortfeasors in a single suit "unless there is privity among those parties, for in that event separate suits against them are treated as the equivalent of separate suits against the same party.") (internal citations omitted).[11]

Herrion's second argument is somewhat difficult to follow. Specifically, Herrion argues that suing a party in his or her "individual" capacity under Section 1983 is "completely different" from suing them in their "official" capacity. Pl.'s Suppl. Opp'n at 6. The proposition is entirely non-controversial. As the Court has already observed, official-capacity suits are treated as suits against the government entity itself. *See Hafer*, 502 U.S. at 25. Meanwhile, individual-capacity suits are just that — suits against individuals as individuals. But what significance Herrion intends to draw from the proposition is never made clear. True, courts have held that application of the so-called "differing capacities" exception to *res judicata* means that a government official sued in his individual capacity cannot invoke *res judicata* where there has been a prior action

---

[11]  A second authority cited by Herrion is easily distinguishable because it involved a situation where the defendants did "not fall within the orthodox categories of privies." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 329-30 (1955). A third authority addressed not *res judicata* but the separate question of necessary joinder. *See Temple v. Synthes Corp. Ltd.*, 498 U.S. 5, 7 (1990).

against him in his official capacity.  *See, e.g.*, *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000).

But when applied to the facts of this case, the argument goes nowhere.   Herrion has abandoned

his claims against the Security Officers in their official capacities.  *See supra* Part IV.A.2.  All

that is left is Herrion's claims against the Security Officers in their individual capacities and, in

this regard, District of Columbia law provides that the Security Officers are, as individuals, in

privity with Children's National as to the judgment entered in the Superior Court action because

that action, like this one, concerned a matter within the scope of their agency.  *See Major*, 653

A.2d at 381.  As a result, the fact that the Security Officers are sued "individually" in this action

is irrelevant.  *Cf. Advantage Health*, 139 F. Supp. 2d at 111 n.2.  The "differing capacities"

exception has no bearing on this case.

　　　　In the final analysis, to allow this case to proceed against the Security Officers would

create a framework under which a plaintiff could consciously design a legal strategy which would

allow him two shots at the same target.  Consistent with the underlying aims of *res judicata* — a

doctrine which is designed to promote the finality of judicial determinations, to foster reliance on

judicial decisions by minimizing the possibility of inconsistent decisions, to conserve scarce

judicial resources, and to spare adversaries the vexation and expense of redundant litigation —

the Court declines the invitation to create such a framework here.  An aggrieved party should be

given "but one opportunity" to secure redress for an alleged wrong.  *Molovinksy v. Monterey Co-

op., Inc.*, 689 A.2d 531, 533 (D.C. 1996).  The additional security for recovery of loss provided

by the doctrine of vicarious liability should not afford an injured plaintiff the further option to

split his claims and litigate successively the issues upon which his claims are founded.  Where

the matter concerns conduct undertaken within the scope of the agency, he is ordinarily in a

22

position to sue both the principal and the agent, and may reasonably be expected to do so.  In any event, this is the expectation imposed by the law of the District of Columbia.  Herrion has already had his opportunity to seek redress for the events that allegedly transpired on September 17, 2007 in the Superior Court.  He will not have a "second bite at that same apple."  *Natural Res. Def. Council*, 513 F.3d at 261.

## V.  CONCLUSION

For the reasons set forth above, the Court shall grant Defendants' [7] Motion for Summary Judgment and dismiss this action in its entirety.  An appropriate order accompanies this memorandum opinion.

Date:   May 24, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge